STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO: AP06-26

REED STREET NEIGHBORHOOD HOUSING, LP

            Plaintiff
                                        ORDER ON PLAINTIFF'S
                                        RULE 80B APPEAL
    v.

CITY OF WESTBROOK

            Defendant

        This matter comes before the Court on Reed Street Neighborhood

Housing, LP's 80B appeal of administrative action taken by the City of

Westbrook.  For the reasons stated below, the appeal is GRANTED.

                            **BACKGROUND**

        Plaintiff, Reed Street Neighborhood Housing, LP ("Reed Street") is a

Maine limited partnership based in Portland, Maine.  Defendant, City of

Westbrook (the "City"), is a Maine Municipal Corporation in Cumberland

County.  Reed Street owns a 7.07 acre parcel of land at 27 Reed Street, located off

of Route 302 in Westbrook.  Reed Street seeks to build a development containing

23 rental units on its lot, which it plans to call Clearwater Bend.  The purpose of

the development would be to provide affordable housing on a sliding scale

based on income, with priority for five units going to disabled tenants.

        In February 2005, Reed Street filed three applications with the City,

seeking subdivision approval, site plan approval, and a special exception permit.

The special exception was required to build multi-family housing in the

                                    1

Residential Growth Area 2 zone. The Westbrook Planning Board ("the Board") held a public hearing on April 19, 2005 to entertain comments about the proposal. Some residents were concerned about increased traffic, impact on the school system, diminished property values and an increased police presence. The Board tabled further discussion until May 3, when it met to reconsider the applications and review a traffic study.

At that time, the Board approved the special exception application, finding that the multi-family development would not impact "existing public ways." But, the Board also denied the application for subdivision approval because it was not satisfied that there would not be excessive traffic congestion where Route 302 intersects Reed Street, a dead end road. With the exception of traffic concerns, the Board found that the project satisfied the criteria for subdivision plan approval. Reed Street petitioned the Board for reconsideration, and the Board denied Reed Street's application a second time in June 2005 and Plaintiff appealed to this Court (the prior case will be referred to as "Reed I").[1]

In Reed I, this Court considered whether the Board was precluded from rejecting the subdivision approval request based on anticipated traffic problems, in light of its traffic finding when evaluating the special exception. 2006 Me. Super. LEXIS 82 at *3. Reed Street had argued that the findings of fact underlying the disparate decisions were "essentially the same," and that the traffic findings underlying special exception approval should have been res judicata when the Board considered traffic impact during the subdivision and approval process, as the special exception was never appealed. Id at *4.

---

[1] See Reed Street Neighborhood Housing, LP v. City of Westbrook, CUMSC-AP-2005-046 (Me. Super. Ct., Cum. Cty., Apr. 13, 2006) (Crowley, J.).

2

The City, however, argued that the special exception addressed traffic inside the development, while the subdivision review considered traffic impact and safety in the larger community. *Id.* at *5. Rejecting this argument, the Court noted that when assessing the application for a special exception, the Board had to determine whether the use would "burden existing public ways," and that the ordinance made no distinction between internal and external traffic. *Id.* This Court remanded the matter to the Board for it to explain the apparent contradiction between approving the special exception application and denying the subdivision plan application, based on the same traffic evidence. *Id.* at *6. If the Board could not articulate a legal difference between the requirements for each kind of permit, the first traffic finding would be entitled to preclusive effect, or administrative estoppel. *Id.* In that case, the Board would have to grant subdivision approval. *Id.* at *7.

On remand, at a May 30, 2006 meeting, the Board explained that traffic analysis in a special exception is "quantitative," but analysis in subdivision approval involves considering more information, such as pedestrian safety and "practical usage." Consequently, it denied Reed Street's subdivision approval request.[2] It did not address the site plan application. Reed Street again appealed to this Court. This Court subsequently ordered that Count I for review of agency action would proceed as an 80B appeal, that Counts II and III would be stayed. Following adjudication of this appeal, the latter two counts will go forward as an independent civil action.

---

[2] In its conclusions, traffic impact was the only one of 21 areas considered in which the Board determined that the subdivision application did not satisfy the requirements for approval.

3

Reed Street argues that the Court's prior ruling about administrative estoppel is the law of the case, and the subdivision should be approved, because the Board did not meaningfully distinguish the two standards. It asks this Court to vacate the Board's findings and remand with instructions to grant the subdivision application and proceed to site plan review. The City argues that its Board satisfied the Court's directive in *Reed I* by providing a logical explanation for the differences between granting a special exception and approving a subdivision, so the appeal should be denied.

## DISCUSSION

### 1. Standard of Review.

Review of a planning board's factual findings is "for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." *O'Toole v. City of Portland*, 2004 ME 130, ¶ 8, 865 A.2d 555, 558. This Court is "limited to determining whether the record contains evidence to justify the Board's [factual] determination." *Lewis v. Maine Coast Artists*, 2001 ME 75, ¶ 14, 770 A.2d 644, 650. A municipal board's interpretation of a zoning ordinance, however, is a legal question entitled to de novo review. *Lewis v. Town of Rockport*, 2005 ME 44, ¶ 11, 870 A.2d 107, 110.

### 2. Law of the Case.

"Law of the case" is the principle that when deciding questions of law, "the decision by an appellate court controls in subsequent proceedings in the same court." *Blance v. Alley*, 404 A.2d 587, 589 (Me. 1979). In *Blance*, the Law Court applied law of the case where a plaintiff relied upon the same evidence in his second trial that he had used in his first. *Id.* at 590. On appeal, the Court held

4

that the same "deficiency" it had found on his first appeal persisted on the second one, and therefore vacated a judgment in his favor. *Id.*

In *Reed I*, this Court instructed the Board to explain the apparent inconsistency in its traffic findings. 2006 Me. Super. LEXIS 82 at *6. On remand, the Board did not take new evidence, but explained the distinction between special exception and subdivision review by noting that the former concentrates on whether the applicant is entitled to an exception to build a multi-family dwelling. The latter considers the merits of the proposed project.

But, the *Reed I* court was not concerned with the differences between a special exception permit and a subdivision application, as the parties do not dispute that they are different parts of the process. In *Reed I*, however, the Court's focus was on the *traffic* considerations that play into the two types of applications; it did not hold that special exception decisions as a whole are always entitled to preclusive effect in subdivision application review. The City bypasses the narrow focus of administrative estoppel in this case.

Because this appeal involves a question of law, this Court engages in a de novo review. The Westbrook Land Use Ordinance pertaining to special exceptions states that granting an exception should "[n]ot burden existing public ways." § 204.1(C)(6). The City Code pertaining to subdivision approval states that an applicant must demonstrate that its project "will not cause unreasonable highway or public road congestion with respect to use of the highways or public roads existing or proposed." § 30-54(e); *see also* 30-A M.R.S. § 4404(5) (2005). The former requires that there be no burden on existing roads, but the latter only requires that any effect on traffic be reasonable. It makes no mention of pedestrian safety or other factors mentioned by the Board. On remand, the

5

Board did not cite meaningful *legal* distinctions based on the actual language of the ordinance and code.

Thus, the legal problem in *Reed I* persists – it defies logic that the proposed project would not impact existing public ways, but it also would cause "unreasonable highway or public congestion or unsafe conditions with respect to the use of the highways or public roads." The standard underlying both traffic determinations requires considering the effect of the proposal upon roads. The explanation offered by the City is unsupported by the Westbrook ordinance and code. Moreover, there is no new evidence in this second appeal that would permit this Court to depart from its earlier decision. Because the Board has not sufficiently addressed the inconsistency as a matter of law, this Court's decision regarding the City's arguments in *Reed I* is law of the case in this matter.

3.    Issue Preclusion.

Collateral estoppel, or issue preclusion, applies when an issue has been actually litigated and decided, and determination of the issue is crucial to the judgment. *Larrivee v. Timmons*, 549 A.2d 744, 747 (Me. 1988). "[A] final adjudication in an administrative proceeding has the same preclusive effect as a final adjudication in a former court proceeding." *Crosby v. Town of Belgrade*, 562 A.2d 1228, 1230 (Me. 1989).

In *Reed I*, the Court held that if there were no legal difference between the two standards, the traffic finding made when addressing the special exception would be "conclusive" when considering the subdivision plan. 2006 Me. Super. LEXIS 82 at *6. This is so because analyzing traffic impact is essential to both special exception and subdivision review, and because that issue was actually debated and decided at the administrative level. Because traffic impact was the

6

sole basis for the City's denial of the subdivision application, and administrative estoppel resolves that concern, subdivision approval must be granted and the Board should proceed to consider the site plan application.

The entry is:

Plaintiff's 80B appeal is GRANTED. This matter is remanded to the City of Westbrook Planning Board with instructions to approve the subdivision plan within ten (10) days of the date of this order. The Board is then directed to consider the site plan application.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE: _January 18, 2007_

Roland A. Cole
Justice, Superior Court

7

)F COURTS
land County
Box 287
ine 04112-0287

JOHN SHUMADINE ESQ
PO BOX 9785
PORTLAND ME 04112 — P1

( OF COURTS
)erland County
O. Box 287
Maine 04112-0287

EDWARD BENJAMIN ESQ
PO BOX 4630
PORTLAND ME 04112 — DY